H. G. McMillan, Appellant, v. Chicago, Rock Island & Pacific Railway Company and Great Northern Railway Company.

**Railroads:** transportation of live stock: negligent delay: evidence. The rule that a carrier is not liable for failure to feed and water animals in transit where the same are accompanied by a caretaker, unless it fails to furnish the party in charge with proper facilities for caring for the animals when requested, does not relieve the carrier from liability for negligent delay in transportation which the caretaker can not prevent by the exercise of reasonable diligence. The evidence in this case is held to show unreasonable delay by a connecting carrier.

**Same:** connecting carriers: agency. The agents of a transfer company taking a car from the initial carrier and switching it to the connecting carrier are also agents of the connecting carrier, in the sense that it is only through them that it can be advised that the car is ready for transportation by it.

**Same:** unreasonable delay: burden of proof. The burden of establishing any special excuse for failure to make prompt shipment is upon the carrier.

**Same:** connecting carriers: duty to transport. It is the duty of a connecting carrier to receive and transport cars delivered to it without waiting for a new contract of shipment; especially where the carrier did not advise the shipper that it would not transport the same until a new contract was made.

*Appeal from Lyon District Court.*—Hon. David Mould, Judge.

Friday, February 18, 1910.

ACTION to recover damages for negligence in the transportation of a horse, the property of plaintiff, resulting in the death of the animal. At the conclusion of the evidence offered for plaintiff, there was a directed verdict in favor of defendants, and from judgment thereon plaintiff appeals.—*Reversed.*

*J. M. Parsons,* for appellant.

*J. L. Kennedy, E. C. Roach, Carroll Wright* and *J. L. Parrish,* for appellees.

McCLAIN, J.—The plaintiff shipped a carload of draft horses from Des Moines, where they had been exhibited at the State Fair, to Hamline, where they were to be exhibited at the Minnesota State Fair, a written contract being entered into with the Rock Island Company for transportation over its line to Minneapolis and delivery of the car there to the proper connecting carrier; the liability of the Rock Island Company being limited to its own line. The evidence tends to show that the car left Des Moines on Friday evening, September 1st, and reached Minneapolis about 1:30 on Sunday morning following, and that without delay it was taken from the Rock Island Company by the Minnesota Transfer Company for the purpose of being switched to the connecting track of the latter company with the defendant the Great Northern Railway Company, by which it was to be transferred to the proper place for unloading at the state fair grounds at Hamline, a suburb of St. Paul; that the proper agent of the Great Northern Company was notified by the agent of the transfer company about 6 o'clock Sunday morning that thirty-five cars, including the car containing plaintiff's horses, were ready to be taken by the Great Northern Company from the transfer track to the fair grounds; that during the forenoon of that day some of the cars destined for the

fair grounds were taken by the Great Northern Company, but that the car containing plaintiff's horses was not removed from the transfer track until the afternoon, and did not reach the place for unloading at the fair grounds until about 3:30 that afternoon; and that by reason of the delay in taking the car from the transfer track to the fair grounds, plaintiff's horses became chilled, and one of them as a result was taken sick and died. The action was for damages accruing to plaintiff by reason of the death of this animal. A verdict directed for the defendant, the Rock Island Company, at the conclusion of the evidence was justified on the ground that there was no evidence tending to show negligence in delivering the car containing plaintiff's horses to the transfer company, which was the connecting carrier, and we find nothing in the argument for appellant requiring a review of this ruling. The argument is directed entirely to the liability of the Great Northern Company.

The contract under which the horses were shipped from Des Moines over the line of the Rock Island Company requires that they be accompanied by some one to take care of them for the owner, provision for

1. RAILROADS: transportation of live stock: negligent delay: evidence.

transportation of one or more caretakers being made in the car itself, and two employees of the owner in fact accompanied the animals. As this contract provides that its conditions should be available to connecting carriers completing the transportation of the property from the terminus of the Rock Island Company to its destination the Great Northern Company was warranted in assuming that caretakers did accompany the horses to feed, water, and look after them, and the argument in this respect for the Great Northern Company is that it should not be held liable for any want of care of the horses to protect them from the effect of becoming chilled, as that duty was imposed by the contract upon the caretakers. It seems to be well settled that under

such circumstances the carrier is not liable for failure to feed or water animals in course of transportation, unless it fails to furnish to the caretaker in charge of them proper facilities for the purpose when requested, or fails to afford facilities for unloading where unloading becomes necessary for that purpose. *Grieve v. Illinois Central R. Co.,* 104 Iowa, 659. But we think this rule does not relieve the carrier from liability for its negligent delay in transporting the animals to their destination, if such delay has as its proximate result an injury to the animals which the caretaker could not have prevented in the exercise of diligence.

In this case there is evidence tending to show that horses in high condition, such as those usually transported for purposes of exhibition, are likely to become heated while the cars are in motion, owing to nervousness and excitement of the horses due to such motion, and to be chilled when the cars are allowed to stand for a considerable length of time, and that during the fifteen hours elapsing between the delivery of the car containing plaintiff's horses to the transfer track ready to be taken by the Great Northern Company and their final delivery at the fair grounds a few miles away, plaintiff's horses did become chilled, and as a result one of them contracted a cold, from which illness it susbsequently died. It also appears that after the Great Northern Company was notified that the car was ready for transfer to the fair grounds its agents were repeatedly urged to hasten the transfer of the car, in order that the horses might be unloaded, and that there was nothing which plaintiff's caretakers could do toward preventing the horses becoming chilled until they could be unloaded at the fair grounds. Conceding the rule to be that the burden of proof is on the plaintiff to show negligent delay on the part of the carrier, and injury therefrom as the proximate result reasonably to be anticipated from the delay, we think

there was enough evidence to take the case to the jury on these questions.

The agents of the transfer company were also agents of the Great Northern in this sense that it was only through the agents of the transfer company that the Great Northern Company could be advised that the car was ready for transportation by the latter company to its destination; and, as already stated, the agents of the Great Northern Company were advised without unreasonable delay of that fact. It appears also that the proper employees of the Great Northern Company were personally urged by the employees of plaintiff to facilitate the delivery of the car at the fair grounds, and the jury might have properly found under the evidence that there was an unreasonable delay on the part of the employees of the Great Northern Company in taking the car to the fair grounds as requested. Other cars ready for transfer at the same time were in fact transferred by the Great Northern Company to the fair grounds in a much shorter time.

2. Same: connecting carriers: agency.

If there was any special excuse, such as unusual rush of business at the particular time, for not more promptly delivering the car at the fair grounds, it was for the Great Northern Company to show that fact. The evidence in the record tends to negative any such excuse. That the contract would not relieve the carrier from liability for negligence in failing to transport the horses to their destination in a reasonable time is settled in the case of *Grieve v. Illinois Central R. Co.*, already cited, and in *Wisecarver v. Chicago, R. I. & P. R. Co.*, 141 Iowa, 121.

3. Same: unreasonable delay: burden of proof.

We see no merit in the contention that the Great Northern Company was chargeable with no duty as to the transportation of this car of horses until a new shipping contract was made by it with the owner. A carrier is bound to accept and transport cars delivered to it for

transportation without a special contract, and the car in question was delivered to the Great Northern

**4. Same:** connecting carriers: duty to transport.

Company for transportation when it was placed on its transfer track at Minneapolis, and it was notified of that fact. At no time, so far as appears from the evidence, was the plaintiff or any person representing him advised that the car would not be taken by the Great Northern Company until there was a new contract. Its employees undertook to transport the car without such contract, and in fact did transport it; but, as already indicated, the evidence tends to show that there was an unreasonable delay on its part in doing so.

We think that the case should have been submitted to the jury on the evidence as to the liability of the Great Northern Company, and the judgment in favor of that company is *reversed*.