ELLIOTT, Respondent, v. CHICAGO, M. & ST. P. RY. COMPANY, Appellant.

(150 N. W. 777.)

(File No. 3569.   Opinion filed January 3, 1915.   Rehearing denied March 18, 1915.)

1.  **Carriers—Damages—Initial and Connecting Carriers, Contractual Relation Between—Liability of Connecting Carrier—Complaint.**

Where a complaint alleged that plaintiff's horses were delivered by initial carrier to defendant carrier, as a connecting carrier, and that while being transported over defendant's line certain acts of negligence of defendant resulted in injury to the horses, to plaintiff's damage, **held,** that when defendant accepted and undertook to carry the property over its line, it thereby impliedly became subject to the contract between plaintiff and the initial carrier, and became directly liable to plain-

tiff for its own negligence; and the complaint states a cause
of action against defendant.

2.   **Same—Damages to Shipment—Liability of Connecting Carrier—
Federal Statute—Proviso.**

The Carmack Amendment (Act June 29, 1906, Ch. 3591, Sec.
7, 34 Stat. 595 [U. S. Comp. Stat. 1913, Sec. 8592]) to the
Interstate Commerce Act (Act Feb. 4, 1887, Ch. 104, 24 Stat.
386), Sec. 20, providing that any common carrier receiving
property for interstate shipment shall issue a receipt or bill of
lading therefor, and shall be liable to holder thereof for any
loss or injury caused by it, or by any carrier to which the
property is delivered, or over whose line it may pass, held, not
to deprive such holder of his right to sue a connecting carrier
for its negligence; such being the effect of that section, in view
of the proviso thereto that nothing therein shall deprive such
holder of "any remedy or right of action which he has under
existing law;" since, under that section, the abstract or sub-
stantive law as to liability, whether applied to an initial or
succeeding carrier, is exclusively governed by the federal law,
while the remedy or right of action is concurrent with those
then existing under the general law; the abstract law of liabil-
ity being one thing, the shipper's remedy or right of action
being another.

Smith and Gates, J. J., dissenting.

3.   **Courts—State Courts—Interstate Commerce—Damage to Ship-
ment—Concurrent State and Federal Jurisdiction—Federal
Statute—Proviso.**

The liability of a carrier under the Carmack Amendment to
the Interstate Commerce Act, Sec, 20, whether the suit be
against the initial or succeeding carrier, may be enforced by a
state as well as a federal court; said Amendment, and the
proviso to said section that nothing therein shall deprive a
shipper holding a bill of lading of "any remedy or right of
action which he has under existing law," merely placing the
shipper in a position to recover for injured property and to
relieve himself from the task of locating the active tort-feasor.

Smith and Gates, J. J., dissenting.

4.   **Actions—"Right of Action"—"Cause of Action"—Federal Inter-
state Commerce Act—Proviso—Carriers.**

Under the proviso to the Carmack Amendment of the Inter-
state Commerce Act, Sec. 20, which proviso provides that noth-
ing in that section shall deprive a shipper holding a bill of
lading of "any remedy or right of action which he has under
existing law," held, that the meaning of the expression "right
of action" as used therein must be determined in the light of
the whole phrase "remedy or right of action." The right of

action pertains to remedy and relief through judicial proced-
ure, while cause of action is based on the substantive law of
legal liability; and the concluding proviso of said Amendment
relates to remedy and right of action as matter of judicial pro-
cedure.

Smith and Gates, J. J., dissenting.

Appeal from Circuit Court, Brown County.  Hon. FRANK
McNULTY, Judge.

Action by George T. Elliott against the Chicago, Milwaukee
& St. Paul Railway Company, to recover for injury to horses,
through negligence, shipped over defendant's railway as a connect-
ing carrier.  From an order overruling a demurrer to the com-
plaint, defendant appeals.  Affirmed.

*William G. Porter,* and *Ed. L. Grantham,* for Appellant.

*C. O. Newcomb,* for Respondent.

(1) Under point one of the opinion, Appellant cited:  Sec.
1693, Civil Code of South Dakota; Am. & Eng. Enc. of Law, Vol.
I, p. 406 and cases cited; Montgomery County Bank v. Albany
City Bank, 7 N. Y. 459.

Respondent cited:  Mechem Agency, Section 571, 572.

(2) Under point two of the opinion, Appellant cited:  Adams
Express Company v. Croninger, 226 U. S. 491; McGoon v. North-
ern Pacific Railway Co., 204 Fed. 998; Atlantic Coast Line v.
Riverside Mills, 219 U. S. 186; Atchison, T. & S. F. Ry. Co. v.
Word, (Tex.) 159 S. W. 375.

Respondent cited:  Atlantic Coast Line v. Riverside Mills,
219 U. S. 186; Eastern Ry. Co. v. Montgomery, (Tex.) 139 S.
W. 885; Otrich v. St. Louis, Iron Mountain & S. W. Ry., (Mo.)
134 S. W. 669; Southern Pacific Ry. Co. v. Krenshaw Bros.,
(Ga.) 63 S. E. 865; Tradwell v. Chicago & N. W. Ry. Co., 136
N. W. 794; St. L. S. W. Ry. of Texas v. Ray, (Tex.) 127 S. W.
281; Adams Express Co. v. Croninger, 226 U. S. 491; Myrick v.
Michigan Central Ry. Co., 107 U. S. 102; Storm Lake Tubb &
Tank Factory v. M. & St. L. Ry. Co., 209 Fed. 895; 6. Cyc. 376,
and cases cited; Galveston, Houston and S. A. R. Co. v. Wallace,
223 U. S. 481.

McCOY, P. J.  In this case plaintiff, by his complaint, alleged
that he delivered to the Union Pacific Railway Company, at
Grand Island, Neb., certain horses for transportation to Aber-
deen, S. D.; that said horses were carried by said Union Pacific

Railway Company to Council Bluffs, Iowa, and there delivered to the Chicago, Milwaukee & St. Paul Railway Company, as a connecting carrier, for transportation to Aberdeen; and that, while being transported by the latter railway company, certain acts of negligence of said last-named company resulted in injury to said horses to plaintiff's damage in the sum of $1,000. The action is against the connecting carrier only. To this complaint the defendant interposed a general demurrer on the grounds: (1) That it fails to state facts sufficient to constitute a cause of action in favor of plaintiff against defendant; (2) under the allegations of the complaint, if a cause of action exists it exists solely against the Union Pacific Railway Company, the initial carrier, and no action for damages in the transportation of said property can be maintained against this defendant. The demurrer was overruled, and defendant appeals.

[1] The first contention of appellant is that no contractual relations existed between plaintiff and defendant; that the defendant is the agent of the initial carrier for the purpose of carrying out the initial carrier's contract with plaintiff; and that, as such agent, it is liably only to its principal, the Union Pacific aRilway Compan, and is not liable to the plaintiff in this action. We are of the view that this contention is not tenable. When defendant accepted and undertook to carry said property from Council Bluffs to Aberdeen, it thereby, impliedly at least, made itself subject to the provisions of said contract, and became liable for its own negligent acts in relation to said property. See note 31 L. R. A. (N. S.) pp. 90, 91.

[2] It is the further contention of appellant that such complaint is insufficient in that under its allegations the cause of action, if any, is solely against the Union Pacific Railway Company, as initial carrier, and that under the amendment to the Interstate Commerce Act, known as the Carmack Amendment (34 U. S. Statutes at Large, 586, § 20), no action can be maintained against a connecting carrier for loss or damage, even though occurring on its line. The only authority that is claimed to support appellant's contention is the decision in the case of Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257, and particularly that portion thereof which reads as follows:

"One illustration would be, a right to a remedy against a succeeding carrier, in preference to proceeding against the primary carriers, for a loss or damage incurred upon the line of the former. The liability of such succeeding carrier in the route would be that imposed by this statute, and for which the first carrier might have been made liable."

The precise question involved in the case at bar is whether or not suit may be maintained against a succeeding or connecting carrier by a shipper where the injury is known and alleged to have occurred by reason alone of the negligent acts of the connecting carrier. We are constrained to the view that there is nothing in the Croninger decision that has or was intended to have any application whatever to the proposition involved in this case. The only question before the court in that case was whether or not the substantive law of the state or the substantive federal law governed the fixing of the substantive liability of the carrier, and that irrespective of whether such carrier be initial or connecting. The question as to whether the initial carrier only could be sued in such cases was in no manner before the court in the Croninger case, and what was said by the court in that case only referred to the question of substantive liability, and had no reference whatsoever as to whether or not a succeeding carrier might or might not be sued as well as the initial carrier. Under the language quoted from the Croninger decision, "the (substantive) liability of such succeeding carriers" would, most certainly, be that imposed by the federal law, and not that imposed by the state enactment, and would be the same liability "for which the first (or initial) carrier might have been made liable" had suit been brought against the initial instead of the succeeding carrier. If the succeeding carrier could not be sued at all, then there would be no liability against the connecting carrier to be applied against the "first carrier"; clearly indicating, as we think, that the court in the Croninger case only had in view the question of substantive liability.

[3] The substantive liability fixed by federal statute, whether the suit be against the initial or succeeding carrier, may be enforced by a state as well as a federal court. Galveston Ry. Co. v. Wallace, 223 U. S. 481, 32 Sup. Ct. 205, 56 L. Ed. 516. The Carmack Amendment contains the proviso:

"That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law."

The initial and succeeding carriers, where injury occurs to a shipment of goods, may all be tort-feasors, any one or all of which may be sued for such injury. The connecting carrier, whether intermediate or terminal, was not liable for damages not occurring on its own line, but was alone liable for its own independent negligent acts which did occur on its own line. See note 31 L. R. A. (N. S.) pp. 90, 92, and 94. These were the rules as to the remedies and rights of action of the shipper both in the federal and state courts existing prior to and at the time of the enactment of the Carmack Amendment. The Carmack Amendment merely places the shipper in a position where he may be able to recover for injured property and relive himself, oftentimes, from the task of locating the active tort-feasor. But if the shipper knows which one among a number of carriers caused the injury, he may sue that one alone. Galveston Ry. Co. v. Piper, 52 Tex. Civ. App. 568, 115 S. W. 107; Otrich v. Ry. Co., 154 Mo. App. 420, 134 S. W. 665; McMillan v. C., R. I. & Pac. Ry. and G. N. Ry., 147 Iowa, 596, 124 N. W. 1069; Tradewell v. C. & N. W. Ry., 150 Wis. 259, 136 N. W. 794; Storm Lake Tub & Tank F. v. M. & St. L. Ry. (D. C.) 209 Fed. 895; Uber v. C., M. & St. P. Ry., 151 Wis. 431, 138 N. W. 57. There is nothing in the Croninger decision that conflicts with or overrules these decisions of the state courts. It is certain that both the state and federal court do consider like cases and render judgment against connecting carriers since the enactment of the Carmack Amendment, and this as late as the month of June, 1914. M., K. & T. Ry. v. Harris, 234 U. S. 412, 34 Sup. Ct. 790, 58 L. Ed. 1377. If the connecting carrier cannot be sued at all, it would produce in some instances a most unconscionable and unreasonable state of affairs. A shipment of merchandise might be started over the line of an initial carrier in the state of Massachusetts destined to some shipper at some point in this state, and some injury occur in this state at or near the destination point. All the evidence and all the witnesses might be situated in this state. It would amount to practical denial of justice to compel the shipper, or the connecting carrier, to take the evidence and the witnesses all the way to

Massachusetts and wait around in the courts there until the cause
might be tried.   Again, the initial carrier might be a bankrupt
against whom a recovery would be worthless.   The result of hold-
ing that only the initial carrier can be sued is loaded with some
very drastic and deplorable results.   We are of the opinion that
the legislative mind had these results in view when it attached
to the Carmack Amendment the broad and comprehensive proviso:

"That nothing in this section shall deprive any holder of such
* * * bill of lading of any remedy or right of action which he
has under existing law."

[4] Under the then existing law the shipper, who held such
bill of lading, had a remedy or right of action, both in the federal
and state courts, against the succeeding or connecting carrier for
its own negligent acts.   The abstract or substantive law as to lia-
bility, whether applied to an initial or succeeding carrier, has been
made exclusively goverened by the federal law.   The abstract law
of liability is one thing, and the shipper's remedy or right of ac-
tion is another.   By this concluding proviso of the amendment the
remedy and right of action thereunder are made concurrent with
the remedy and right of action under the general law then ex-
isting.   Any other construction will wholly destroy and nullify
this proviso.   But for the existence of this proviso it might, with
some reason, be contended that the shipper's remedy and right
of action was also exclusively controlled by the interstate com-
merce act as amended; but this proviso is as much a part of the
interstate commerce act as any other part thereof.   By this proviso
the distinction between what is purely abstract liability, or sub-
stantive cause of action, and what is purely remedy and right of
action, is clearly recognized.   Right of action and substantive lia-
bility, or cause of action, may erroneously be confounded.   The
meaning of the expression "right of action" as used in this pro-
viso must be determined in the light of the company in which it
is found, viz., "remedy or right of action."   The maxim, "Noscitur
a sociis," is applicable.   36 Cyc. 1118.   "Right of action" is one
thing; "cause of action" is another.   Right of action pertains to
remedy and relief through judicial procedure.   Cause of action is
based on the substantive law of legal liability.   1 Am. & Eng.
Ency. of Law & Prac. 1038; 1 R. C. L. 313; Pomeroy's Remedies,
§§ 346-353; 1 Cyc. 642.

The opinion in the Croninger case relates solely to the substantive law of liability, or cause of action. The concluding proviso of the Carmack Amendment relates to remedy and right of action as a matter of judicial procedure.

The order appealed from is affirmed.

WHITING, J. (concurring). Having carefully considered the reasoning of Justice Smith, and being firmly convinced that he has placed a wrong construction upon the words of Justice Lurton quoted from the Croninger case, I feel constrained, in view of the unusual importance of the question before us, to add a few words to what seems to me to be a most clear and convincing discussion thereof by Justice McCOY.

When construing the language of any opinion, the one thing which, above all others, should always be kept in mind, is: What was the real question before the court for consideration and which was necessarily answered by such decision. Having ascertained what was the question considered, then, presuming, as one should, that every word used was intended to have some bearing upon such question, it should be possible to arrive at an absolutely correct construction of such opinion. What was the question before the court in the Croninger case? It was certainly not the question of the right of a shipper to sue a connecting carrier, as such question was not in the remotest degree connected with the case. Two questions were before the court in that case: (1) Did the Carmack Amendment or the law of Kentucky control the validity of the contract whose terms fixed a limitation of value upon the property described in a bill of lading, the shipment being interstate? (2) Was such limitation valid under federal statute? It was the first of these questions that demanded the chief attention of the federal court, and it was in connection with the discussion thereof that Justice Lurton used the words quoted by Justice SMITH and upon which, as I am convinced, he has placed an erroneous construction. Previous to the enactment of the Carmack Amendment, it had been held that the state law—statutory or otherwise—controlled the validity of a contract entered into within a state even though such contract related to an interstate shipment. Penn. R. Co. v. Hughes, 191 U. S. 477, 24 Sup. Ct. 132, 48 L. Ed. 268. It was contended that the body of this amendment was enacted for the purpose of rendering the initial carrier

liable for damages resulting from negligence regardless of which carrier was guilty of negligence, but that the proviso left the validity of that provision of the contract relating to limitation of liability, and therefore the measure of liability, to be determined by the law of Kentucky. That the effect of such amendment was to render the initial carrier liable was not questioned, but it was the view of the court that, if state laws were to control the validity of the provision of a contract entered into under such amendment, it "would cause the proviso to destroy the act itself." This was clearly the controlling thought of the jurist who wrote the opinion. He said:

"Prior to that (Carmack) amendment the rule of carrier's liability, for an interstate shipment of property, as enforced in both federal and state courts, was either that of the general common law as declared by this court and enforced in the federal courts throughout the United States (Hart v. Pennsylvania R. Co., 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717), or that determined by the supposed public policy of a particular state (Pennsylvania R. Co. v. Hughes, 191 U. S. 477, 24 Sup. Ct. 132, 48 L. Ed. 268), or that prescribed by the statute laws of a particular state (Chicago, M. & St. P. R. Co. v. Solan, 169 U. S. 133, 18 Sup. St. 289, 42 L. Ed. 688)."

He thus called attention to three classes of law, distinguished the one from the other according to the source from whence each sprang, and noted that the federal court had, prior to such amendment, recognized all three of these classes of law as controlling the liability of carriers in particular cases; in answer to the contention that the proviso in such amendment had the effect of rendering the terms of interstate contracts still subject to all the above three classes of law, Justice Lurton says:

"This view is untenable. It would result in the nullification of the regulation of a national subject and operate to maintain the confusion of the diverse regulation [the common law as declared by the federal court, the law as determined by the supposed public policy of a particular state, and the statutory law of a particular state] which it was the purpose of Congress to put an end to."

Justice Lurton recognized that there was a limitation to the

effect of the body of the amendment, which was established through the enactment of the proviso; but he held that such limitation must be one in harmony with the "purpose of Congress to put an end to" the then existing "diverse regulation." He therefore held that the words, "existing law," as found in such proviso, meant the "general common law, as declared by that court"; but held that the words "existing law" did not refer to that law "determined by the supposed public policy of a particular state, or that prescribed by statute law of a particular state." He said:

"To construe this proviso as preserving to the holder of any such bill of lading any right or remedy which he may have had under existing federal law at the time of his action gives to it a more rational interpretation than one which would preserve rights and remedies under existing state laws, for the latter view would   *   *   *   destroy the act itself."

He thus announced what "existing law" must still be recognized in determining what remedy or right of action one had under the Carmack Amendment, but he did not, in any manner, determine against whom such right of action existed; this question not being before the court. But, as illustrating how this federal law would be controlling, even in an action brought against the connecting carrier, who, of course, would not be a party to the shipping contract, and, by the same words, clearly recognizing the continuance of a right of action by the shipper against the connecting carrier, Justice Lurton continued:

"One illustration would be a right to a remedy against a succeeding carrier, in preference to proceeding against the primary carrier, for a loss or damage incurred upon the line of the former. The liability of such succeeding carrier in the route would be that imposed by this statute, and for which the first carrier might have been made liable."

In other words, Justice Lurton said: One illustration of the effect of this amendment is that, if a party elects to proceed against a succeeding carrier in preference to proceeding against the carrier with whom his contract is made, yet, under such amendment, the terms of such contract will fix the liability of the succeeding carrier just as it would have fixed that of the primary carrier if such party had elected to take advantage of

the privilege given by such amendment and had proceeded against such primary carrier. Varnville Furniture Co. v. Charlestown & W. C. Ry. Co., 98 S. C. 63, 79 S. E. 700. I can find no word or words in the opinion in the Croninger case that either directly or by the remotest inference infers or implies that the common-law right to proceed against the connecting carrier, as such right had theretofore been recognized by the federal courts, had been destroyed by such amendment; but said decision clearly holds that, regardless of which carrier an action is brought against, its liability can be no greater than would be the liability of the initial carrier, whenever such party has, under the provisions of the Carmack Amendment, entered into a shipping contract containing fair and reasonable limitations as to liability.

If anything more was needed to establish the correctness of the above conclusion, it is found in the following: In referring to the effect of the Carmack Amendment, Justice Day, in Boston & M. R. Co. v. Hooker, 233 U. S. 97, 34 Sup. Ct. 526, 58 L. Ed. 868, says:

"The subject of interstate transportation of property has been regulated by federal law to the exclusion of the power of the states to control in such respect by their own policy or legislation."

And he cites the Croninger case as supporting the above. And in the same case Justice Pitney, referring to the Croninger case, says that therein it was held:

"That by the Carmack Amendment the subject-matter of the liability of railroads under bills of lading issued for interstate freight is placed under federal regulation so as to supersede the local law and policy of the several states, whether evidenced by judicial decision, by statute, or by state Constitution."

And Justice Pitney also says that the Croninger case held affirmatively:

"That in matters not covered by its own express terms it had the effect of establishing the common-law rules respecting the carrier's liability, as laid down in the previous decisions of this court, and adopted generally by the federal courts."

If there was left any doubt as to the holding in the Croninger case, if there was room for one to infer, from the lan-

guage thereof, that the court had not only passed upon the two
questions presented to it, but upon the right of the shipper to
sue the connecting carrier—a question clearly not raised by the
issues of the cause—yet there was left no room for any such
inference when, within a very few weeks after writing the opin-
ion in the Croninger case, Justice Lurton wrote the opinion in
Kansas City S. R. Co. v. Carl, 227 U. S. 639, 33 Sup. Ct. 391,
57 L. Ed. 683.    This was an action originally brought in a
state court, and from the Supreme Court of that state an ap-
peal was taken to the federal court; it was an action wherein the
shipper was suing a connecting carrier.    As stated in the opin-
ion, the sole question passed upon by the state court and the
sole question before the federal court was:

"As to whether the plaintiff in error, as the final carrier in
the route, was entitled to the benefit of the stipulation in the
release signed, releasing the * * * primary carrier 'and all
other railroad and transportation companies over whose lines the
* * * property may pass to destination, from any loss or
damage the propery may sustain in excess of $5 per hundred-
weight.' "

Remembering that the consideration of this question, when
raised in an action between a shipper and connecting carrier,
must assume a right of action by the shipper against the con-
necting carrier for a recovery of an amount not exceeding $5
per hundredweight, it is clear that the case proceeded upon the
theory that the shipper had a right to sue such connecting car-
rier.    Remembering, also, that it was the liability to the shipper
that was under consideration, it is clear that it was this lia-
bility to the shipper that Justice Lurton was referring to when
he said :

"The liability of any carrier in the route over which the
articles were routed, for the loss or damage, is that imposed
by the act as measured by the original contract of shipment so
far as it is valid under the act."

It is absolutely inconceivable that the learned Justice would
have gone into an elaborate discussion of the question of lim-
itation in amount upon the carrier's right of recovery, if, but
a few days prior thereto, the court, through himself, had held
that, under said Carmack Amendment, there could be no liability

of the connecting carrier to the shipper.  Again, in the case of Missouri, K. & T. Co. v. Harris, 234 U. S. 412, 34 Sup. Ct. 790, 58 L. Ed. 1377 (which case is referred to by Justice Mc-COY and which was a case wherein the shipper was suing the connecting carrier, we find the court, in harmony with what was said in both the Hooker and Carl cases, declaring that the Croninger decision, as well as the many decisions based thereon, held "that the special regulations and policies of particular states upon the subject of the carrier's liability for loss or damage to interstate shipments and the contracts of carriers with respect thereto have been superseded"; and, by its decision in such case recognizing fully the liability of the connecting carrier to the shipper by sustaining a judgment for costs, which right to costs could rest only upon the existence of a right of action by such shipper against the connecting carrier.

SMITH, J. (dissenting).  I differ from my majority Associates only as to the effect to be given the decisions of the United States Supreme Court in the Croninger and other cases, construing section 20 as amended by section 7 of the Carmack Amendment.

Justice McCOY says:

"The opinion in the Croninger case relates solely to the substantive law of liability or cause of action."

I think the determination of the amount of plaintiff's recovery under the bill of lading and the valuation therein, discussed in that case, also directly involved a construction of the act as to the remedy.  It was held that the liability of the defendant was founded on common-law negligence, but it was also held that the remedy—the right to recover particular damages—was controlled by the contract or bill of lading, which was held to be valid and not in violation of section 20.  The remedy was held to be predicated upon the contract for shipment, made obligatory upon both the initial and connecting carrier by the same federal statute.  But aside from this, section 20 affirmatively declares the liability of the initial carrier to the holder of the shipping receipt, not only for its own negligence, but also for the negligence of the connecting carrier.  By the construction given the contract and the statute, in the federal decisions, the initial carrier is made the principal, in its relations to the

shipper, over the whole route, and I think the connecting carrier is made responsible, not to the shipper, but to the initial carrier. Congress has undertaken to limit the right of contract of both the initial and connecting carriers and to prescribe their respective liabilities. I think Justice Lurton in the Carl case, as in the Croninger case, had in mind the three forms of statutory liability specified in the body of section 20, when he said in the Carl case:

"The liability of any carrier in the route over which the articles were routed, for loss or damage, is that imposed by the act, as measured by the original contract of shipment, so far as it is valid under the act"—

and did not have in mind any "remedy or right of action" saved by the proviso.

Justice Lurton, in the Croninger case, says:

"It (section 20) embraces the subject of the liability of the carrier under a bill of lading which he must issue. * * * Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject and supersede all state regulations with reference to it."

The "subject" referred to is the subject-matter of section 20, that which defines and limits the right of contract and the liability both of the initial and the connecting carriers. In Atlantic C. L. R. Co. v. Riverside Mills, 219 U. S. 186, 31 Sup. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7, Justice Lurton said of this section of the act:

"The rule is adapted to secure the rights of the shipper by securing unity of transportation with unity of responsibility. The regulation is one which also facilitates the remedy of one who sustains a loss, by localizing the responsible carrier."

This is in effect an adoption of the English rule which is that, upon a through contract, the shipper's only action for damages for default, no matter upon what line it occurs, is against the initial carrier. Elliott on Railroads, § 1441, and cases cited.

It may be noted that under the original interstate commerce act and its amendments prior to the Carmack Act, there was no compulsory through billing or rating. There was no compulsion

on connecting carriers to make mutual contracts. All this is changed by the Carmack Act. Beale & Wyman on Railroad Rate Regulation, § 999.

The conclusion reached by Justice McCOY in the majority opinion, and also the concurring opinion of Justice WHITING, is predicated upon the construction placed upon the proviso in section 20:

"That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law."

The majority opinion holds that the words "existing law" means the "general common law as declared by that court"; that is, by the Supreme Court of the United States. Justice Lurton, in the Croninger case, after discusing both the carrier's liability and the contract, as defined and limited by section 20, discusses the meaning of the words "existing law" in the proviso, as follows:

"To construe this proviso as preserving to the holder of any such bill of lading any right or remedy which he may have had under existing federal law at the time of his action gives to it a more rational interpretation than one which would preserve rights and remedies under existing state laws, for the latter view would cause the proviso to destroy the act itself. One illustration would be a right to a remedy against a succeeding carrier, in preference to proceeding against the primary carrier, for a loss or damage incurred upon the line of the former. The liability of such succeeding carrier in the route would be that imposed by this statute, and for which the first carrier might have been made liable" (if the shipper had brought the action against the initial carrier).

Unless the words "federal law" used by Justice Lurton are either ignored or treated as obiter dictum, it would seem difficult to reach the conclusion announced in the majority opinion, and avoid a conflict with the federal decisions.

Justice WHITING concedes the necessity of giving weight to the language of Justice Lurton, but urges that in the Croninger case he was not discussing the liability of the connecting carrier to the shipper. It is true that issue was not directly involved in that case. But the proviso in section 20, which de-

clares that nothing in that section shall deprive the shipper of "any remedy or right of action which he has under existing law," was discussed, and it cannot mean one thing when the court is discussing one question, and be given another meaning when it is discussing another question. It means just one thing, according to Justice Lurton, and he defined it finally when he declared that the words "existing law" means "federal law."

"Common law as defined in the federal courts" cannot be held to be "federal law," without convicting Justice Lurton of an extraordinarily careless use of ordinary legal terms. There certainly is no federal common law. The common law, "as defined in the federal courts," is nothing more than the common law as it is said to exist in a particular state. Smith v. Alabama, 124 U. S. 465, 8 Sup. Ct. 564, 31 L. Ed. 508. It seems to me therefore that it is the liability declared in the body of section 20, and which is held to have its inception in common-law negligence, to which Justice Lurton refers in the extracts quoted by Justice WHITING, and not to "existing law" spoken of in the proviso. If the liability declared in the body of section 20 is based on the "common law as defined in the federal courts," and the proviso is also held to preserve any "remedy or right of action" under the existing "common law as defined in the federal courts," the proviso would be worse than meaningless—it would, as Justice Lurton says, "destroy the act itself." On the contrary, it would seem that the proviso was inserted out of abundance of caution for the express purpose of saving any other "remedy or right of action" given the shipper by "federal law," which might otherwise be excluded by implication.

If Justice McCOY's view that the words "remedy or right of action" relate only to the remedy—or the right to seek relief in court—be correct, then the whole proviso might well be construed as intended to preserve the right to sue in state as well as federal courts, a right which was recognized by "existing law," and which possibly might have been deemed lost, under the rule of exclusion.

Justice WHITING says that the right of the shipper to sue the connecting carrier was not passed upon in the Croninger case because that question was "clearly not raised by the issues of the cause," and cites the fact that Justice Lurton also wrote

the opinion in the Carl case.   Justice WHITING says that the Carl "case proceeded upon the theory that the shipper had a right to sue such connecting carrier," and also that "it was the liability to the shipper that was under consideration"; in other words, that Justice Lurton must have assumed a right of action by the shipper against the connecting carrier, in deciding that case.   This facility of drawing conclusions when they sustain a theory and rejecting them when they do not is admirable in its simplicity and effectiveness.   But Justice WHITING seems to have ignored the very explicit statement of Justice Lurton in the Carl case that:

"The sole question before the federal court was as to whether the plaintiff in error, as the final carrier in the route, was entitled to the benefit of the stipulations in the• release signed, releasing the primary carrier and all other railroads and transportation companies over whose lines    *    *    *    property may pass," etc.

The care with which the court limits that decision to the one point involved deprives it of the significance assumed by Justice WHITING.   That court has always held that the compulsory shipping contract originates and measures the liability of both the initial and connecting carrier, and that each is entitled to the benefit of its lawful provisions.

Justice WHITING says, however, that the connecting carrier "of course would not be a party to the shipping contract." But the statute requires a thorough contract, and this necessarily makes the connecting carrier a party to it, and all the decisions give him the benefit of its lawful provisions.   Justice Lurton meant this when he said:

"The liability of any carrier in the route    *    *    *    is that imposed by this act, as measured by the original contract of shipment.    *    *    *"

What liabilities are "imposed by this act?"   Justice Lurton thus answers the question:

"It is a liability to any holder of the bill of lading which the primary carrier is required to issue for any loss, damage, or injury to such property, caused by it or by any connecting carrier, to whom the goods are delivered."

This is the only liability named in the statute in favor of

the shipper. The other liability "imposed by the statute" is that of the connecting carrier to the initial carrier, for loss occurring on the lines of the former, and for which the initial carrier has been compelled to pay. May it not be that the action of the shipper against the initial carrier was intended to be also an adjudication between the two carriers of the liability of the connecting carrier to the initial carrier, in view of the fact that the connecting carrier whose negligence occasioned the loss is required by the statute to pay the initial carrier "the amount of such loss, damage, or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment or transcript thereof." A recovery against the initial carrier would be thus effective to adjudicate every liability created by the statute in a single action. When it appears that the shipper delivers goods to the initial carrier in good condition, and the last connecting carrier delivers them at destination in a damaged condition, in an action against the initial carrier the burden of discovering the negligence, if any, which caused the injury, whether it occurred on its own line, or the line of the connecting carrier, is cast upon the initial carrier. If the loss occurred from negligence of the connecting carrier, it is the real party in interest in any litigation which may arise, and is presumed to be in possession of the facts constituting a defense, and no valid reason can be suggested for allowing the connecting carrier in effect to defend twice, first, by producing its evidence against the shipper, and then the same evidence against the initial carrier, in an action for reimbursement, upon facts involving the same acts of negligence.

The statute which, for the benefit of the shipper, creates "unity of transportation with unity of responsibility," and "facilitates the remedy of one who sustains a loss, by localizing the responsible carrier," affords to the shipper benefits which in the legislative mind might well have been deemed to more than off-set the one disadvantage urged, viz., that in some instances. the shipper might be required to seek his remedy against the initial carrier in a distant forum.

A review of the rules governing the right of contract and the liabilities of carriers under such contracts, existing prior to the Carmack Amendment, I think would make clearer the rea-

sons for the adoption of a rule of single liability to the shipper; but such review would unduly extend this dissenting opinion. These views are presented, not because of a belief that my own conclusions are infallible, but because of the very great importance of the question, and with a hope that it may be presented to the proper court for consideration and final adjudication. Should the Supreme Court of the United States hereafter determine that I have mistaken the effect of the statute and of its decisions, I shall only entertain a deeper respect for the opinions of my majority associates.

GATES, J., concurs in the views expressed by Judge SMITH.