In re BLOCK 1, DONLY HEIGHTS ADDITION, OKLAHOMA CITY.

No. 31276. May 16, 1944.

*149 P. 2d 265.*

Randell S. Cobb, Atty. Gen., and J. Walker Field, Asst. Atty. Gen., for appellant, State Board of Public Affairs.

A. L. Hull, of Ponca City, for appellee, Continental Oil Company.

HURST, J. The board of adjustment of Oklahoma City made an order granting to the Continental Oil Company a permit to drill a well for oil and gas purposes on a drilling unit in Oklahoma City. The drilling area consisted of approximately 20 acres. The state owned four lots in the drilling area. The order fixed the amount of the bonus to be received by each property owner based upon the area of the property owned and fixed the royalty at 1/8 of the oil and gas produced. The order was made to apply to the state as well as to the individual property owners. From said order the State Board of Public Affairs appealed to the district court, where the order was affirmed, and this appeal followed.

After the appeal was lodged in this court, the Legislature adopted House Joint Resolution No. 8 of the Nineteenth Legislature, S.L. 1943, page 347. This resolution authorizes the State Board of Public Affairs to accept the bonus as

fixed by the order appealed from and as tendered by the Continental Oil Company and to execute division orders, contracts, and agreements for and on behalf of the state for the state's proportionate share of the ⅛ royalty or proceeds from oil and gas produced from said drilling area, in accordance with the order of the board of adjustment now under review.

Said resolution was adopted by both branches of the Legislature on March 11, 1943, and was received in the office of the Governor on March 13, 1943. On March 19, 1943, it was returned by the Governor to the House of Representatives for correction of the title so as to make it refer to the Board of Adjustment of Oklahoma City rather than to the Board of Adjustment of Oklahoma County. It is not contended that the typographical error renders the resolution invalid. The correction was never made by the two branches of the Legislature. The Legislature adjourned on April 1, 1943. On May 13, 1943, the resolution was returned by the officers of the Senate to the House of Representatives. On the same day the Chief Clerk of the House of Representatives, under the direction of the Speaker, returned the resolution to the Governor, and the personal attorney to the Governor deposited it in the office of the Secretary of State on May 13, 1943, and it was duly marked filed. This was the customary method of transmitting resolutions and bills that had been passed by the Legislature from the Governor's office to the office of the Secretary of State. The resolution now on file in the office of the Secretary of State is regular in form and appears to have been duly enrolled and engrossed and signed by the presiding officer.

Subsequent to the deposit of said resolution in the office of the Secretary of State, the State Board of Public Affairs accepted the sum of $742.86 from the Continental Oil Company as the bonus due the state under said order. The State Board of Public Affairs has executed division orders in accordance with the provisions of the order appealed from under authority of said resolution and has accepted the royalty money due. The bonus and royalty money have been deposited with the State Treasurer and they have become a part of the general revenue fund of the state. The foregoing facts are contained in an agreed statement of facts filed in this cause.

While other questions are argued, we think it is necessary that we pass upon but three propositions, (1) whether, under the foregoing facts, the Governor vetoed the resolution, (2) whether the resolution in invalid by reason of the provisions of section 52, art. 5, of the State Constitution, and (3) whether the state, by accepting the bonus and royalty, is thereby precluded from questioning the validity of the order appealed from.

1. We are of the opinion that the Governor did not intend to veto the resolution. His purpose in returning it to the House of Representatives was to give the Legislature an opportunity to correct the error in the title, not to veto it. We think this question is controlled by our recent decision in Goddard v. Kirkpatrick, 193 Okla. 92, 141 P. 2d 292. There the enrolled bill was returned by the Governor to the Senate at its request, while here the resolution was returned to the House of Representatives on the Governor's own motion. The distinction is immaterial. The enrolled and engrossed resolution, in proper form, now on file in the office of the Secretary of State, imports absolute verity and cannot be impeached in the manner attempted in the instant case.

The act of the Governor in returning the resolution to the House of Representatives for correction did not constitute a veto of the resolution. Peebly v. Childers, 95 Okla. 40, 217 P. 1049; Ex parte Benight, 53 Okla. Cr. 293, 11 P. 2d 208. And since the resolution was not vetoed within five days after its receipt in the Governor's office, it became effective without the Governor's approval. Const., sec. 11, art. 6; Ex parte Benight, above.

2. Section 52, art. 5, of the State Constitution provides:

"The Legislature shall have no power to revive any right or remedy which may have become barred by lapse of time, or by any statute of this state. After suit has been commenced on any cause of action, the Legislature shall have no power to take away such cause of action, or destroy any existing defense to such suit."

The Attorney General contends that the resolution is invalid by reason of the last clause of said section, in that it had the effect of destroying existing defenses to "such suit," the defenses being, (a) that the state is not bound by the orders of the Board of Adjustment of Oklahoma City, and (b) that the proceeding constitutes a suit against the state and that the state has not given its consent to such suit. He calls our attention to State v. Ward, 189 Okla. 532, 118 P. 2d 216, which holds that the first clause in said section, that forbids the Legislature from reviving any right or remedy which may have been barred by the lapse of time or by any statute of this state, applies to the rights of the state as well as to individual rights.

The Continental Oil Company contends that this constitutional provision does not render the resolution invalid since the constitutional provision refers to *suits* on *causes of action,* and the proceeding now under review does not constitute a suit on a cause of action.

We are of the opinion, and hold, that the contention of the company is sound and that the constitutional provision does not apply to special proceedings such as the one now under review. No suit or cause of action is involved. The Legislature possesses all power not denied to it by the Federal or State Constitution or valid treaties (Wentz v. Thomas, 159 Okla. 124, 15 P. 2d 65; Maddox v. Hunt, 183 Okla. 465, 83 P. 2d 553; 11 Am. Jur. 619, § 18; 12 C. J. 805, § 237), and the cited constitutional provision does not, for the reason just given, apply.

The joint resolution has the force and effect of a valid legislative enactment. Ward v. State, 176 Okla. 368, 56 P. 2d 136.

3. Since the resolution is valid, the State Board of Public Affairs acted under authority of law in signing division orders and in accepting the money due for bonus and royalties, in accordance with the order under review. The state is bound by its valid contracts and valid acts of its officers (59 C. J. 170; 25 R. C. L. 392), and while it is true, as held in State ex rel. King v. Friar, 165 Okla. 145, 25 P. 2d 620, and as argued by the Attorney General, that inaction of public officers does not ordinarily operate as an estoppel against the state, this rule does not apply so far as valid contracts or valid affirmative acts of state officers affecting private or proprietary rights of the state are concerned. 21 C. J. 1186-1189; 10 R. C. L. 704.

Affirmed.

GIBSON, V. C. J., and BAYLESS, DAVISON, and ARNOLD, JJ., concur.