**BOARD OF LAW LIBRARY TRUSTEES
OF OKLAHOMA COUNTY, STATE
OF OKLAHOMA, Appellant,**

v.

**STATE of Oklahoma ex rel. Tom PETUS-
KEY, Court Clerk of Oklahoma Coun-
ty, and Charles E. Ferrell, Jr., Adminis-
trative Director of the Courts, Appel-
lees.**

No. 70528.

Supreme Court of Oklahoma.

Nov. 26, 1991.

Rehearing Denied March 4, 1992.

Tom R. Cornish, Oklahoma City, for appellant.

Robert H. Henry, Atty. Gen., Neal Leader, Guy L. Hurst, Asst. Attys. Gen., for appellees.

OPALA, Chief Justice.

The dispositive issue here is whether the district court may declare rights in a rejected public-law-based court fund claim. We answer this question in the negative.

## I.

### THE ANATOMY OF LITIGATION

#### A.

#### THE CONTROVERSY

The Board of Law Library Trustees of Oklahoma County (Trustees) brought a *declaratory judgment action*[1] against both the Court Clerk of Oklahoma County and the state's administrative director of the courts (together called defendants). Relying upon the terms of 20 O.S.Supp.1983 § 1202,[2] the Trustees claimed they are entitled to a portion of small claims' fees col-

---

1. The petition, which expressly invokes the Uniform Declaratory Judgments Act, 12 O.S.1981 § 1651 et seq., alleges that "this is a proper action for the Court to determine the rights, status and legal relation between the parties and the validity of any statute defining the duties of the Defendants herein."

2. The pertinent terms of 20 O.S.Supp.1983 § 1202 provide:

 "Unless the board of law library trustees shall direct that no disbursement be effected or that a lesser amount than provided in this section be transferred, *the court clerk*, at the end of each quarter of every calendar year, *shall transfer to the Law Library Fund the sum*

lected in Oklahoma County between April 8, 1986 and May 15, 1987.[3] *The critical barrier interposed to the Trustees' quest for relief was a chief justice's explicit directive by which all clerks of the district court were instructed not to transfer to the Law Library Fund any court costs collected in small claims.*[4] The legal correctness of this very directive, which remained in force from April 8, 1986 to May 20, 1987, was *central* to the nisi prius contest now before us for review.[5]

## B.

## PLEADINGS AND PROCEDURE

The petition alleges that in refusing to transfer the requested funds during the period in question both the clerk and the administrative director *"were acting without legal authority,* and were in violation of the Oklahoma Statutes...."[6] (Emphasis added.) Defendants moved to dismiss for want of district court cognizance to rule upon the validity of a chief justice's directive, as well as for failure to state a claim upon which relief can be granted. The trial court, which sustained the motions based on its conclusion that the defendants "acted properly under the pertinent statutes ..., decline[d] to take a position contrary to the clear and unambiguous administrative directive of the Chief Jus-

tice...." Judgment went to the defendants.

Trustees appeal and challenge *both* the chief justice's authority to direct the court clerk to withhold the payments here in question and the correctness of the clerk's action in refusing to transfer the funds. Trustees maintain their claim is not against the court fund but rather against the court clerk and "indirectly against the Administrative Director of the Courts" because the "funds collected by the Court Clerk are ultimately transferred to the Director." We hold that the action brought by the Trustees should have been dismissed because (1) their claim is not cognizable in the ordinary course of adjudicative process[7] affordable by the district court's judicature; (2) the relief sought is clearly dehors the purview of the Uniform Declaratory Judgments Act, 12 O.S.1981 § 1651 *et seq.;* and (3) since the court clerk's rejection of the Trustees' demand stood rested on a chief justice's directive, their claim in suit was *coram non judice.*

## II.

THE VERY NATURE OF THE TRUSTEES' DEMAND LIES DEHORS THE DISTRICT COURT'S ADJUDICATIVE COGNIZANCE

■ A demand for payment from the court fund, which rests *solely* on provisions

---

equal to the number of all noncriminal cases which were filed in the district court during the last preceding quarter and in which a cost deposit was made, multiplied by Three Dollars and fifty cents ($3.50). * * *" (Emphasis added.)

3. The Trustees sought both a "money judgment" as well as declaratory relief.

4. The chief justice's directive relied on those terms of 12 O.S.1981 § 1769, *infra,* which then provided that "no portion of fees and deposits in small claims cases shall be set aside in a Law Library Fund." Section 1769 was repealed by Okl.Sess.L.1987, ch. 92 § 1, effective May 15, 1987.

The pertinent terms of 12 O.S.1981 § 1769 provided:
"The provisions of Title 20, §§ 1202 and 1218, of the Oklahoma Statutes for the benefit of

the Law Library Fund *shall be inapplicable to fees charged and collected in small claims cases; no portion of fees and deposits in small claims cases shall be set aside in a Law Library Fund."* (Emphasis added.)

5. The Trustees' demand did not include funds collected after May 15, 1987. In a May 20, 1987 memorandum the administrative director of the courts notified all clerks that 12 O.S.1981 § 1769, *supra* note 4, had been repealed and directed them to resume transferring to the Law Library Fund monies collected in small claims ($3.50 per claim).

6. The quoted language is excerpted from the petition.

7. The ordinary course of *adjudicative* process is governed by the Pleading Code and by the rules of practice and procedure applicable to "actions."

of a statute regulating the court fund,[8] the county law library funds or some other aspect of court-managed funds [9] and thus lacks independent underpinning in the private law of obligations, is a *public-law claim* to be pressed not by district court litigation but rather directly against the court fund's governing board.[10] The demand ·is incapable of conversion into a "cause of action" for the district court's process of ordinary judicature. A public-law-based court fund claim moves along a procedural track vastly different from an "action" on a claim governed by the Pleading Code, 12 O.S.Supp.1984 § 2001 et seq., and by the rules of practice applicable to the ordinary process of adjudication.[11]

 A claim like that the Trustees attempted to press below must first be presented to the court fund board,[12] and if denied, the claimant may *then* demand a post-rejection hearing before that board.[13]

Mandamus in the Supreme Court constitutes the only available corrective relief from the board's denial of a claim.[14]

The Trustees did not follow this procedure. *They brought a suit that does not lie—an action for declaratory judgment on a public-law-based court-fund claim rejected by the court clerk. Their claim for money transfer cannot be translated into a cause of action for declaratory judgment.*

According to the Trustees' brief, their demand is not against the court fund or its board but solely against the clerk and the administrative director of the courts. *We need not pause to decide here whether the clerk could have made the payout sought below without a prior board approval. Suffice it to say that* <u>all</u> *court fund demands refused by the court clerk must be pressed before the board.* If court-fund assets are to be paid out, a claim deemed

---

**8.** The "court fund" is created by the provisions of 20 O.S.1981 § 1301, whose pertinent terms are:

> *"All fees, fines and forfeitures shall, when collected by the court clerk, be deposited by him in a fund in the county treasury designated 'The Court Fund',* and shall be used, from year to year, in defraying the expenses of holding court in said county. The county treasurer shall act as an agent of the state in the care and handling of the court fund, but his bond shall cover his obligations in regard to this fund." (Emphasis added.)

**9.** See, e.g., 20 O.S.Supp.1983 § 1202, *supra* note 2.

**10.** The court fund board is established by the terms of 20 O.S.1981 § 1302, which provide in pertinent part:

> *"The governing board of the court fund* created by Section 1 of this act *shall be a district judge, an associate district judge and the clerk of the court of the county where the fund is established.* * * *"* (Emphasis added.)

**11.** *Court Fund of Tulsa County v. Cook*, Okl., 557 P.2d 875, 877–878 (1976); see also 12 O.S.Supp. 1985 § 2001, whose pertinent terms provide:

> *"The Oklahoma Pleading Code governs the procedure in the district courts of Oklahoma in all suits of a civil nature* whether cognizable as cases at law or in equity <u>*except where a statute specifies a different procedure.*</u>" (Emphasis added.)

The notion of multiple procedural tracks for some classes of district court proceedings which cannot be accommodated by the Pleading Code is not new to the body of our adjective law. See, e.g., the Uniform Adoption Act, 10 O.S.1981 · § 60.1 *et seq.;* the provisions of 10 O.S.1981 § 1101–1506, commonly known as the "Juvenile Code" or "Children's Code;" statutes governing filiation proceedings, 10 O.S.Supp.1989 § 70 *et seq.,* probate procedure, 58 O.S.1981 § 1 *et seq.,* and condemnation proceedings for highways, 68 O.S.1981 § 1708, and railroads, 66 O.S.1981 § 51 *et seq.*

**12.** See 20 O.S.1981 § 1302, *supra* note 10. The governing board of the court fund may act in the manner prescribed by 20 O.S.Supp.1987 § 1304(a), whose pertinent terms provide:

> "(a) Claims against the court fund shall include only such expenses as may be lawfully incurred for the operation of the court in the county. Payment of the expenses may be made *after the claim therefor is approved by the district judge who is a member of the governing board of the court fund and either the local court clerk or the local associate district judge who is a member of said governing board.* * * *"* (Emphasis added.)

**13.** *Court Fund of Tulsa County v. Cook, supra* note 11 at 878.

**14.** *Court Fund of Tulsa County v. Cook, supra* note 11 at 878.

assertable against a recalcitrant or delinquent clerk must be presented to the board. Statutes that prescribe the clerk's duties *vis-a-vis* the court fund [15] are to be construed with other cognate provisions which plainly vest in the board the power to *govern* and manage transactions and assets and hence invest it with the *exclusive* authority over *any* claim rejected by the clerk that is to be satisfied by resort to the fund.[16]

The clerk was sued here in his *official* capacity. The Trustees' demand against him is not rested on a private-law plea but rather consists of a public-law claim which must be satisfied, if at all, by a board-ordered payout. Even if we were to assume for argument's sake that the clerk does have some statutory authority to pay without the board's prior affirmative approval some minor routine statutorily-authorized items of expense, *this claim*, previously refused by the court clerk based on a chief justice's directive, nonetheless lies clearly dehors the purview of the Uniform Declaratory Judgments Act and the district court's cognizance.

**15.** See, e.g., 20 O.S.Supp.1983 § 1202, *supra* note 2.

**16.** See *supra* note 12.

**17.** *Spain v. Kernell*, Okl., 672 P.2d 1162, 1164–1165 (1983); *Hawkins v. Hurst*, Okl., 467 P.2d 159, 160 (1970) (the court's syllabus ¶ 1); *Clark v. Gray*, 204 Okl. 221, 228 P.2d 654, 656 (1951).

**18.** 12 O.S.1981 § 1651 *et seq.*

**19.** "[Judicial] authority is not limited to adjudication, but includes certain ancillary functions, such as *rule-making and judicial administration*, which are essential if the courts are to carry out their constitutional mandate." (Emphasis added.) *O'Coin's, Inc. v. Treasurer of County of Worcester*, 362 Mass. 507, 287 N.E.2d 608, 611 (1972); *Matter of Salary of Juvenile Director*, 87 Wash.2d 232, 552 P.2d 163, 166 n. 1 (1976). See also *Supreme Court of Virginia v. Consumers Union, Etc.*, 446 U.S. 719, 731, 100 S.Ct. 1967, 1974, 64 L.Ed.2d 641 (1980) (state supreme court acts in its *legislative or rule-making capacity* when it promulgates a bar disciplinary code); *Tweedy v. Oklahoma Bar Ass'n*, Okl., 624 P.2d 1049, 1052 (1981) (the rules governing legal

## III.

## THE DISTRICT COURT LACKS STATUTORY AUTHORITY TO ADJUDICATE THIS DEMAND FOR TRANSFER OF COURT FUNDS

The Supreme Court must inquire, *sua sponte* if necessary, *not only into its own appellate cognizance but also into the original jurisdiction of the court whence the case came.*[17] The precise issue for us to resolve here is whether the Supreme Court's or its chief justice's administrative directive, which deals with some point of internal accounting or general management of court funds, may be the subject of district court's inquiry as an ordinary claim pressed in an action under the Uniform Declaratory Judgments Act.[18] To this question we give today a categorically negative answer regardless of the rubric under which the chief justice's directive here in contest may fall. Indeed, *the exercise of judicial authority manifests itself in three entirely different genres of decision-making process: adjudication, management or administration, and rule-making.*[19]

practitioners are promulgated by this state's Supreme Court in the exercise of its rule-making or legislative function); *Puckett v. Cook*, Okl., 586 P.2d 721, 723 (1978) (judicial authority includes the power to promulgate rules of procedure for orderly court proceedings); *State ex rel. Oklahoma, Etc. v. Denton*, Okl., 598 P.2d 663, 666–667 (1979) (Opala, J., dissenting) (the exercise of bar disciplinary jurisdiction calls for judicial function in both legislative and adjudicative capacities). For an example of this court's exercise of administrative power by transferring a case from the Supreme Court to another tribunal for an evidentiary hearing, see *Application of State ex rel. Dept. of Transp.*, Okl., 646 P.2d 605, 608 (1982).

According to the United States Supreme Court, the question whether an act by a judge is "judicial" depends upon (1) "the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge," and (2) "the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Mireles v. Waco*, —— U.S. ——, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991), quoting from *Stump v. Sparkman*, 435 U.S. 349, 362, 98 S.Ct. 1099, 1107, 55 L.Ed.2d 331 (1978).

## A.

### THE DIRECTIVE AS A COURT RULE

■ If the chief justice's directive here under challenge is to be viewed as a product of the Supreme Court's rule-making power, *review of its validity will not lie in the district court.* This is so because the provisions of 75 O.S.Supp.1987 § 306,[20] which allow the district court to determine the legality of an *agency's* rule in a declaratory judgment action, clearly *do not apply to rules promulgated by a court.*[21] The Administrative Procedures Act[22] *explicitly* excepts "the courts" from the definition of the term "agency."[23]

## B.

### THE DIRECTIVE AS AN ADJUDICATION

■ If the chief justice's directive were rather to be treated as an *adjudicative*

decision, then the terms of 12 O.S.1981 § 951[24] would bar the district court's reviewing cognizance. The pertinent provisions of § 951 restrict the district court's appellate authority to final orders made by an "officer exercising judicial functions" who is *"inferior in jurisdiction* to the district court." Neither the Supreme Court, its administrative director appointed under Art. 7 § 6, Okl. Const.,[25] nor its chief justice could be considered an "inferior" officer to the district court, assuming of course the directive in question qualifies as an exercise of adjudicative function.

## C.

### THE DIRECTIVE AS AN ADMINISTRATIVE ACT

Lastly, if the chief justice's directive were to be viewed as an exercise of the

---

20. The pertinent terms of 75 O.S.Supp.1987 § 306 provide:
"A. *The validity or applicability of a rule may be determined in an action for declaratory judgment in the district court* of the county of the residence of the person seeking relief or, at the option of such person, in the county wherein the rule is sought to be applied, if it is alleged the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff.
"B. *The agency shall be made a party to the action.*
" * * * " (Emphasis added.)

The adjudicative aspects of judicial function are clearly distinguished from managerial by Canon 3 of the Code of Judicial Conduct, 5 O.S.1981, Ch. 1, App. 4. See also Thode, *Reporter's Notes to Code of Judicial Conduct* at 50 (1973), where the author explains that while a judge's usual "adjudicative" duties obviously fall in the "judicial duties" category, the other non-adjudicative duties
"range from court administration duties to appointing members of various kinds of local boards and agencies. * * * The Committee concluded that *each duty 'prescribed by law' should be considered a judicial activity,* whether the duty is provided by constitution, statute, rule, regulation, or common law. *If the activity is one that is prescribed in a judge's jurisdiction as a duty of the judicial office, it is a judicial duty for the purposes of the Code."* (Emphasis added.)

21. See *Matter of Salary of Juvenile Director, supra* note 19, 552 P.2d at 166 n. 1, where the court noted that "judicial function is not limited to adjudication ... [; e]ssential to the modern judiciary, and increasingly implemented, are efficient methods of court administration, including workable budgeting processes."

22. 75 O.S.Supp.1989 § 250 et seq.

23. See 75 O.S.Supp.1990 § 250.3(1), whose pertinent terms provide:
"As used in the Administrative Procedures Act:
"1. 'Agency' means any constitutionally or statutorily created state board, bureau, commission, department, authority public trust in which the state is a beneficiary, or interstate commission, *except:*

\*　　\*　　\*　　\*　　\*　　\*

b. *The courts;"* (Emphasis added.)

24. The terms of 12 O.S.1981 § 951 provide:
"A judgment rendered, or *final order made, by any* tribunal, board or *officer exercising judicial functions, and inferior in jurisdiction to the district court,* may be reversed, vacated or modified by the district court except where an appeal to some other court is provided by law." (Emphasis added.)

25. For the terms of Art. 7 § 6, Okl. Const., see *infra* note 26.

Supreme Court's *administrative* power conferred upon it by Art. 7 § 6, Okl. Const.,[26] then a district court suit to test the act's validity clearly was improper. *Administrative orders lie dehors the district court's declaratory cognizance. 12 O.S.1981 § 1657.*[27]

▆▆▆ An administrative directive of the Supreme Court or of its chief justice may not be subjected to the same mode of court review as that prescribed by law for decisions in claims pressed in the general course of adjudicative process. Neither the procedural regime for nisi prius adjudication nor that for corrective relief from a nisi prius decision is applicable to managerial (administrative) acts performed by officials or institutions within the court system.[28] Review of an administrative decision made in the exercise of a district court's managerial function may be sought only through an original proceeding in the Supreme Court.[29] Similarly, management decisions by a chief justice are reviewable and correctable only by the Supreme Court

sitting in its capacity as the administrative board of directors for the entire judicial system. Art. 7 § 6, Okl. Const.[30]

## IV.

## CONCLUSION

The district court lacks adjudicative authority to entertain the Trustees' challenge to the chief justice's administrative directive. It is hence this court's duty to order the action dismissed as *coram non judice.*[31]

Judgment against the Trustees is accordingly affirmed with directions to dismiss the suit for want of statutory authority to declare rights in a rejected public-law-based court-fund claim and for want of adjudicative cognizance over a claim to funds refused by a court clerk based on the chief justice's directive.[32]

**AFFIRMED AS MODIFIED.**

**LAVENDER, HARGRAVE, ALMA WILSON and KAUGER, JJ., concur.**

26. The terms of Art. 7 § 6, Okl. Const., provide:
"Except with reference to the Senate sitting as a Court of Impeachment and the Court on the Judiciary, *general administrative authority over all courts in this State,* including the temporary assignment of any judge to a court other than that for which he was selected, *is hereby vested in the Supreme Court and shall be exercised by the Chief Justice in accordance with its rules.* The Supreme Court shall appoint an administrative director and staff, who shall serve at its pleasure to assist the Chief Justice in his administrative duties and to assist the Court on the Judiciary." (Emphasis added.)

27. The terms of 12 O.S.1981 § 1657 provide:
"[The Uniform Declaratory Judgments Act] ... *shall not be applicable to orders,* judgments, or decrees *made by* the State Industrial Court, the Corporation Commission, or *any other administrative agency,* board or commission of the State of Oklahoma." (Emphasis added.)

28. *Earl v. Tulsa County Dist. Court,* Okl., 606 P.2d 545, 546 (1980) (the provisions of Art. 7 § 6, Okl. Const., confer upon the Supreme Court the power to resolve issues pertaining to intraservice management).

29. *Court Fund of Tulsa County v. Cook, supra* note 11 at 878–879; see also *Earl v. Tulsa Coun-*

*ty Dist. Court, supra* note 28 at 546, where this court held that its administrative power under Art. 7 § 6, Okl. Const., does not include managerial discretion to establish public defenders' salary when their compensation is controlled by a clear and self-executing statute.

30. See *supra* note 26.

31. See *Spain v. Kernell, supra* note 17 at 1164–1165; *Bryan v. Seiffert,* 185 Okl. 496, 94 P.2d 526, 531–532 (1939) (the court's syllabus ¶ 6). A case is said to be *coram non judice* when the court in which it is brought has no jurisdiction to settle the dispute. Black's Law Dictionary at 305 (5th ed. 1979).

32. A judgment must be affirmed if it can be sustained upon any theory applicable to the controversy. *Willis v. Nowata Land and Cattle Co., Inc.,* Okl., 789 P.2d 1282, 1286–1287 (1990); *Benham v. Keller,* Okl., 673 P.2d 152, 154 (1983); *Utica Nat. Bank & Trust v. Assoc. Prod.,* Okl., 622 P.2d 1061, 1066. (1981). In a public-law controversy, which description fits the case before us, this court is free to change the theory presented by the parties below and followed by the trial court. *Burdick v. Independent School Dist.,* Okl., 702 P.2d 48, 54 n. 10 (1985); *Davis v. Davis,* Okl., 708 P.2d 1102, 1104 n. 2 (1985); *McCracken v. City of Lawton,* Okl., 648 P.2d 18, 21 n. 11 (1982); *Application of Goodwin,* Okl., 597 P.2d 762, 764 (1979). In short, this judg-

HODGES, V.C.J., and DOOLIN and SUMMERS, JJ., dissent.

SIMMS, J., disqualified.

ment is *affirmed* because declaratory *relief* was correctly *withheld;* it is *modified* to show clearly that this district court declaratory claim to refused court funds was *coram non judice.*