2002 OK 2

**CITY OF TAHLEQUAH, Oklahoma, Plaintiff/Appellee,**

v.

**LAKE REGION ELECTRIC, COOPERATIVE, INC., Defendant/Appellant,**

and

**United States of America, ex rel. Rural Electrification Administration, Defendant.**

**No. 95,563.**

Supreme Court of Oklahoma.

Jan. 15, 2002.

Lloyd E. Cole, Jr., Stilwell, OK, for the plaintiff/appellee.

Patrick D. Shore of Derryberry, Quigley, Solomon & Naifeh, Oklahoma City, OK and

Nathan H. Young, III, of Nathan H. Young, III, P.C., Tahlequah, OK, for the defendant/appellant.

Susan Stidham Brandon, Muskogee, OK, for the defendant/United States of America, ex rel. Rural Electrification Administration.

LAVENDER, J.

¶1 Pursuant to the Uniform Certification of Questions of Law Act, 20 O.S.1991 §§ 1601 et seq., the United States Court of Appeals for the Tenth Circuit certified the following question:

Senate Bill 888 [11 O.S.1998 § 21–222] declares a "prospective and retroactive" moratorium on certain municipal condemnations of facilities of rural electric cooperatives and electric utilities. The Oklahoma Constitution, article V, section 52, provides that the legislature lacks "power to take away [a] cause of action" after commencement of a "suit." In light of statements in Oklahoma case law that condemnation matters are special proceedings, not actions at law or suits in equity, does the moratorium affect a condemnation proceeding filed before the enactment of Senate Bill 888?

**I**

**FACTUAL PERSPECTIVE**

¶2 On May 15, 1998 the City of Tahlequah [City] offered to purchase all of Lake Region

1. Lake Region is a rural electric-power distribution cooperative which provides electricity to its members in a northeast Oklahoma seven-county area. The Rural Electric Administration [REA or now called the Rural Utilities Service] financed and holds a secured interest in Lake Region's facilities pursuant to its mortgage agreements in the condemned property (among others).

2. City alleges that it made known since 1994 its intention to condemn Lake Region's electrical facilities and service rights within City's corporate limits.

3. The pertinent provisions of 18 O.S.1991 § 437.2 are:

A cooperative shall have the power:
(k) To ... maintain and operate electric transmission and distribution lines ...;provided further that if such city, town or village in which an area has been or shall be

Electric Cooperative, Inc.'s [Lake Region] [1] electric facilities and service rights within City's corporate limits.[2] Three days later City instituted a proceeding in the District Court of Cherokee County, Oklahoma to condemn the sought—after interests from Lake Region under the applicable provisions of 18 O.S.1991 § 437.2(k).[3] The United States of America, ex rel. Rural Electric Administration, [REA] was named as party-defendant because it owns a security interest in the property sought to be condemned. On June 19, 1998 REA removed the case to the United States District Court for the Eastern District of Oklahoma.

¶3 Upon removal Lake Region moved for the condemnation proceeding's dismissal asserting the statutory moratorium provided for by the terms of 11 O.S.1998 § 21–222. The pertinent statutory language is:

There is hereby declared a moratorium on all municipal condemnation proceedings instituted pursuant to Section 437.2 of Title 18 of the Oklahoma Statutes, initiated prior to July 1, 2002. The moratorium shall also apply to all municipalities or public trusts thereof which attempt to condemn the facilities of electric public utilities or rural electric cooperatives for the purpose of utilizing such facilities for the delivery of electric power and energy. If full consumer choice in the supply of electric power and energy is implemented in this state on

included, as aforesaid, owns and operates a system for furnishing of electric energy to its inhabitants, the cooperative furnishing electric energy in such area shall transfer to such city, town or village, upon its request, the cooperative's electric distribution facilities used in furnishing electric energy in said area ..., subject, however, to the following requirement: The city, town or village shall pay to the cooperative an amount to compensate the cooperative for the fair value of the cooperative's facilities to be acquired by the city, town or village. If such cooperative and city, town or village cannot agree upon the amount to be paid to the cooperative, the city, town or village is authorized to file a *proceeding* in the district court of the county in which such city, town or village, or any part thereof, is located for the acquisition of the cooperative's electric distribution facilities used in furnishing electric energy in said area.... [Emphasis added.]

or before July 1, 2002, the municipal condemnation provisions authorizing municipalities with electric utilities to condemn the facilities of rural electric cooperatives contained in Section 437.2 of Title 18 of the Oklahoma Statutes is hereby repealed. If retail consumer choice is not implemented in this state on or before July 1, 2002, this moratorium shall become null and void. *The moratorium provided for herein shall have prospective and retroactive application.* [Emphasis added.]

The U.S. District Court denied Lake Region's motion, holding that because (1) the City-initiated condemnation proceeding is a "cause of action" brought before § 21–222's moratorium became effective and (2) OKLA.CONST. art V, § 52 [4] denies the Legislature power to abridge a "cause of action" once instituted, the *retroactive* moratorium could not be asserted to stop City's condemnation of Lake Region's facilities.

¶ 4 The U.S. District Court appointed commissioners to determine just compensation for the condemned electric facilities. The appointed commissioners made their determinations and filed a report. Although Lake Region objected to the report, the same was confirmed on April 23, 1999. Lake Region next appealed [unsuccessfully] to the U.S. Circuit Court of Appeals for the Tenth Circuit. Lake Region then sought a jury trial. On February 29, 2000 an award of $3,746,222.00 was entered by the federal district court as just compensation for City's taking of Lake Region's property.

## II

## THE COURT'S FUNCTION WHEN RESPONDING TO A CERTIFIED QUESTION FROM A FEDERAL COURT

■■■ ¶ 5 Because the appeal from which the certified question emanates is not before us for resolution, we refrain (1) from applying the declared *state-law* response to the facts elicited in the federal-court litigation and (2) from passing upon the effect of federal procedure on the issues, facts and proof in the case. We have briefly outlined the case's factual underpinnings to place the certified question in a proper perspective. It is for the United States Tenth Circuit Court of Appeals to analyze our answer's impact on the case and facts ultimately before it.[5] Lastly, we note that City raises constitutional questions (based upon the Legislature's alleged repeal of an act and its effect upon vested rights and proceedings instituted to enforce the same) which are neither embraced in nor inextricably intertwined with the U.S. Court of Appeals for the Tenth Circuit's certified question. To the extent that issues (constitutional or otherwise) are raised in the parties' briefs which are beyond the certified question's scope, the Court refrains from addressing the same.

## III

## CERTIFIED QUESTION ANSWERED

■■■ ¶ 6 The posited query essentially asks whether the municipal condemnation of part of an electrification system qualifies as a "cause of action" which is protected from legislative abrogation by the provisions of OKLA.CONST. art V, § 52, once the same is brought in the district court. Answered simply, a municipal condemnation of the type here in issue is a "special statutory proceeding" and not a "cause of action" as contemplated under art. V, § 52's provisions. Hence, the § 21–222 moratorium on municipal condemnations of electrification systems is not constitutionally infirm since it is outside the purview of the noted constitutional restriction on the Legislature's powers to affect a pending "cause of action."

■■■ ¶ 7 Oklahoma's extant jurisprudence defines a condemnation proceeding—such as the one here in issue-as a *special statutory proceeding* designed to determine

---

4. OKLA.CONST. art. V, sec. 52 provides:
   The Legislature shall have no power to revive any right or remedy which may have become barred by lapse of time, or by any statute of this State. After suit has been commenced on *any cause of action,* the Legislature shall have

no power to take away such *cause of action,* or destroy any existing defense to such suit. [Emphasis added.]

5. *Brown v. Ford,* 1995 OK 101, 905 P.2d 223, 226.

in a single action the damages for property taken from private persons for public use.[6] The right of eminent domain or public taking of private property is a fundamental attribute of the sovereign state [7] that is circumscribed by the provisions of OKLA.CONST. art. 2, § 24 which in essence provides that such takings can only be accomplished with just compensation. The power of condemnation lies dormant within the State until such time as the Legislature by specific enactment delineates the manner and through whom it may be exercised.[8] Such legislative authorization was made by the provisions of 18 O.S.1991 § 437.2 [9] which permitted municipalities to condemn electric transmission and distribution lines lying within their corporate limits. Since the Legislature is empowered to authorize municipal condemnations under prescribed guidelines, it can also impose a stay or moratorium on an earlier legislatively—granted condemnation right. As the challenged legislative act [18 O.S.1991 § 437.2] is facially regular and is a valid exercise of recognized legislative authority, compliance with the statutorily-authorized condemnation procedure will not generate a civil wrong. A cause of action only arises when a wrong or breach of duty by the defendant occurs. It is what produces the necessity of action.[10] When one complies with statutory procedure, no breach of duty happens.

██ ¶ 8 The presence of a civil wrong is a critical identifying characteristic of a "cause of action" since "causes of action" are brought *to remedy civil wrongs* which are threatened or committed.[11] Oklahoma's ex-

tant jurisprudence specifically holds that a condemnation proceeding "is a special proceeding and not a civil action. [Authorities omitted] Condemnation proceedings do not involve a tort and are not civil actions at law or suits in equity." [12] Because a condemnation proceeding is a special statutory proceeding brought to determine just compensation for a public taking and is not a "cause of action" instituted to remedy a wrong, a legislatively-effected stay of such proceedings would neither implicate nor violate art. V, § 52's circumscription of legislative power to take away a cause of action-regardless of when the condemnation was instituted. The retroactive moratorium reflected in the terms of § 21–222 is an effective exercise of legislative power which is not constitutionally infirm.

## CERTIFIED QUESTION ANSWERED.

¶ 9 HARGRAVE, C.J., HODGES, LAVENDER, BOUDREAU and WINCHESTER, JJ., concur.

¶ 10 WATT, V.C.J., OPALA, KAUGER and SUMMERS, JJ., dissent.

OPALA, J., with whom WATT, V.C.J., KAUGER and SUMMERS, JJ., join, dissenting.

¶ 1 The court holds today that a municipal condemnor's right of eminent domain (to compel the sale of an electrical-generation system) is enforceable by a "special statutory proceeding" **whose prosecution does not qualify as rested upon a "cause of action."** Only the latter stands protected by the provisions of Art. V § 52, Okl. Const.,[1] from retro-

---

6. *Graham v. City of Duncan*, 1960 OK 149, 354 P.2d 458, 462.

7. *Harn v. State ex rel. Williamson, Atty. Gen.*, 1939 OK 40, 184 Okla. 306, 87 P.2d 127.

8. *Oklahoma City v. Local Federal Savings & Loan Ass'n of Oklahoma City*, 1943 OK 42, 192 Okla. 188, 134 P.2d 565, 575; *Harn, supra* note 7 at 127.

9. For the pertinent terms of 18 O.S.1991 § 437.2, *see supra* note 2.

10. *Howard v. Brown*, 1935 OK 357, 44 P.2d 959, 962.

11. *Stone v. Case*, 1912 OK 428, 34 Okla. 5, 124 P. 960, 965.

12. *Graham, supra* note 6 at 461; *see also In re Block I, Donly Heights Addition, Oklahoma City*, 1944 OK 213, 194 Okla. 221, 149 P.2d 265, 268, where the Court recognized another specie of special proceeding which lies without the purview of OKLA CONST. art V, § 52's provisions.

1. The text of Art. V § 52, Okl. Const., is:
   "The Legislature shall have no power to revive any right or remedy which may have become barred by lapse of time, or by any statute of this State. After suit has commenced on any cause of action, the Legislature shall have no power to take away such *cause of action* or

spective legislative tampering.[2]  I cannot accede to this view.  *The Constitution's § 52 shield protects from retrospective repeal all those claims for which the courts are authorized to afford vindication by the law in force at a judicial proceeding's commencement.*  The instant condemnation case is hence included under the § 52 umbrella.

¶ 2 The phrase "cause of action" became a legal term of art that was to serve as a synonym and substitute for one's "right to a writ" under any form of action [3]—the legal parlance in use **before** the English pleading system came to be scuttled in the mid-nineteenth century on both sides of the Atlantic Ocean.[4]  Because the substantive legal meaning of this troublesome phrase soon came to be enveloped in controversy,[5] the authors of

destroy any existing defense to such suit."  (Emphasis supplied.)
The legislative act that suspends the municipal exercise of eminent domain power to acquire certain electrification plants is found in 11 O.S. Supp.1998 § 21–222, whose text is:
"There is hereby declared a moratorium on all municipal condemnation proceedings instituted pursuant to Section 437.2 of Title 18 of the Oklahoma Statutes, initiated prior to July 1, 2002.  The moratorium shall also apply to all municipalities or public trusts thereof which attempt to condemn the facilities of electric public utilities or rural electric cooperatives for the purpose of utilizing such facilities for the delivery of electric power and energy.  If full consumer choice in the supply of electric power and energy is implemented in this state on or before July 1, 2002, the municipal condemnation provisions authorizing municipalities with electric utilities to condemn the facilities or rural electric cooperatives contained in Section 437.2 of Title 18 of the Oklahoma Statutes ... [are] hereby repealed.  If retail consumer choice is not implemented in this state on or before July 1, 2002, this moratorium shall become null and void.  The moratorium provided herein shall have prospective and retroactive application."
After-enacted legislation replaces the above statute on which the certified question is based.  The changes have no impact on this court's answer to the posed question.  The new text eliminates the calendar-based time limit for municipal condemnation by providing that the ban shall remain in effect until the enactment of certain enabling legislation (affording consumers a choice among retail electric energy suppliers).  The terms of 11 O.S. Supp.2001 § 21–222, the after-enacted amendment, provide:
"There is hereby declared a moratorium on all municipal condemnation proceedings instituted pursuant to Section 437.2 of Title 18 of the Oklahoma Statutes, initiated prior to the enactment of electric restructuring enabling legislation and the implementation of consumer choice of retail electric energy suppliers.  The moratorium shall also apply to all municipalities or public trusts thereof which attempt to condemn the facilities of electric public utilities or rural electric cooperatives for the purpose of utilizing such facilities for the delivery of electric power and energy.  The moratorium shall remain in effect until the enactment of

electric restructuring enabling legislation and implementation of consumer choice of retail electric energy suppliers.  Upon such enactment of electric restructuring enabling legislation and implementation of consumer choice of retail electric energy suppliers, the municipal condemnation provisions authorizing municipalities with electric utilities to condemn the facilities of rural electric cooperatives contained in Section 437.2 of Title 18 of the Oklahoma Statutes ... [are] hereby repealed.  The moratorium provided for herein shall have prospective and retroactive application."

2.  This condemnation suit was filed in the District Court in Cherokee County, Oklahoma, on 18 May 1998.  It was removed to the United States District Court for the Eastern District of Oklahoma on 19 June 1998.  The statutory ban on acquisitions by eminent domain in contest here bears the effective date of 10 June 1998.  The United States District Court for the Eastern District of Oklahoma denied the electric cooperative's motion to dismiss the case.  It held that the municipality's quest to condemn presses a cause of action that was brought *before* the § 21–222 ban became effective. The case was allowed to proceed as one that stands protected by the § 52 shield.

3.  Koffler and Reppy, Handbook of Common Law Pleading 59, West Publishing Co. (1969).

4.  The reform that transformed the writ system into code pleadings was intended to advance the notion that cases should turn on their substantive merits rather than on the technical and tactical skill of the lawyer.  *Sommer v. Sommer*, 1997 OK 123, ¶ 7, 947 P.2d 512, 521 (Opala, J., dissenting) (citing Jack H. Friedenthal, Mary Kay Kane, Arthur R. Miller, Civil Procedure 238–39 (2d ed.1993)).

5.  The Field Code [the 1848 compilation first adopted in New York] required a litigant to allege "a plain and concise statement of the facts constituting each cause of action (defense and counterclaim) without unnecessary repetition."  N.Y. Law 1851 c. 479 § 1. This facially simple formula came to have varied meanings in different contexts.  See *Sommer, supra* note 4 at ¶ 7, at 521 n. 7 (citing David Mellinkoff, The Language of the Law 17 (1963)) (quoting Black's Law Dictionary 279 (4th ed.1951)).  Two theories came to be

the Federal Rules of Civil Procedure (who began their work in the first third of the twentieth century)[6] discontinued its use in favor of the new term "claim."[7] Despite its multi-meaning facets, the phrase survived in legal parlance to signify an *"alleged invasion of 'recognized legal rights' upon which a litigant bases his claim for relief."*[8] Although scholarly analysis may still be discordant on many aspects, cases now appear to agree on the concept's core meaning which regards failure to state a cause of action as indicating a pleader's missed effort to show the invasion of legal rights.

¶ 3 Generally speaking, a cause of action came to denote that demand for which one is entitled to redress in a judicial proceeding.[9] *The conceptual antonym of "cause of action" is not "special proceeding," but nonactionable detriment*[10] *(damnum absque iniuria).*[11] *The concept's analogue is the full range of judicially redressable disputes.*[12] A condemnee's refusal to sell is actionable harm to the condemnor which becomes remediable by suit predicated on a condemnor's cause of action (against the condemnee). Today's opinion incorrectly turns condemnation into a class of demands for which the law gives no redress, a patently wrong conclusion drawn from a flawed analysis. It ignores the undeniable legal verity that a condemnee's refusal to sell is the condemnor's redressable detriment for which the law affords judicial relief.[13]

¶ 4 Special proceedings no longer form a separate litigation class in Oklahoma.[14] The

---

accepted for testing the "cause of action." The "primary right" theory, advanced by Professor Pomeroy, relates to the nature of the injury alleged to have been suffered. The "aggregate of operative facts" doctrine, first proposed by Professor (later Judge) Clark, focuses solely on the events that give rise to a claim (or claims) for relief. See *Sommer, supra* note 4 at ¶ 7, at 521 n. 7 (citing *Friendenthal, supra* note 4). The term came to be so "encrusted with doctrinal complexity" that the drafters of the Federal Rules of Civil Procedure saw fit to eliminate it altogether. *Davis v. Passman,* 442 U.S. 228, 237, 99 S.Ct. 2264, 2273, 60 L.Ed.2d 846 (1979); *Elliott v. Mosgrove et al.,* 162 Or. 507, 93 P.2d 1070, 1072-74 (1939). By substituting the word "claim" for the phrase "cause of action" the authors hoped to eliminate the conflicting notions about the code's meaning for the term. Blume, The Scope of a Civil Action, 42 Mich. L.Rev. 257, 261 (1943) (citing 1 Moore, Federal Practice (1938)). For a more detailed discussion of the controversy that surrounded the "cause of action," see *Davis,* 442 U.S. at 238, 99 S.Ct. at 2273 n. 15 (citing 2 J. Moore, Federal Practice ¶ 2.06, p. 259 n. 26 (2d ed.1978)); J Pomeroy, Code Remedies 459-466 (4th ed.1904); Wheaton, The Code "Cause of Action": Its Definition, 22 Cornell l.q. 1 (1936); Clark, The Code Cause of Action, 33 Yale l j. 817, 820 (1924).

6. Robert Millar, Civil Procedure of the Trial Court in Historical Perspective 61, New York University Press (1952); Mitchell, The Federal Rules of Civil Procedure 75 et seq. in David Dudley Field, Centenary Essays, New York University Law School (1949).

7. In lieu of the term "cause of action," the Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Davis, supra* note 5 at 422 U.S. at 238, 99 S.Ct. at 2273 n. 15 (citing Fed.R. Civ. P. 8(a)).

8. *Sommer, supra* note 4 at ¶ 7, at 521 n. 7 (citing *Davis,* 442 U.S. at 237-38, 99 S.Ct. at 2273 citing *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 693, 69 S.Ct. 1457, 1463, 93 L.Ed. 1628 (1949)); Koffler & Reppy, *supra* note 3 at 59.

9. "[A] situation of state of facts that entitles a party to maintain an action in a judicial tribunal" is a cause of action. Bryant, the law of pleading under the codes of civil procedure 168-169, Little, Brown and Company (1894); Koffler & Reppy, *supra* note 3 at 25.

10. *"Actionable detriment"* is addressed in *Schaff v. Rose,* 1925 OK 292, ¶¶ 3-5, 111 Okla. 237, 239 P. 458, 459; *Chicago, Rock Island & Pacific Railway v. Beatty,* 1914 OK 341, 42 Okla. 528, 141 P. 442, 443; *Midland Valley R. Co. v. Larson,* 1914 OK 41, 41 Okla. 360, 138 P. 173, 175.

11. The Latin phrase means harm for which the law provides no redress. Black's Law Dictionary 398 (7th ed.1999).

12. A "cause of action" is generally a union of the plaintiff's right with the defendant's infringement. *Magnolia Petroleum Co. v. Norvell,* 1952 OK 20, ¶ 6, 240 P.2d 80, 81-82. Koffler & Reppy, *supra* note 3 at 85.

13. *Watkins v. Board of Com'rs,* 1918 OK 445, 70 Okla. 305, 174 P. 523, 524-25; *Koch et al. v. Oklahoma Turnpike Authority,* 1953 OK 148, ¶ 18, 208 Okla. 556, 257 P.2d 790, 794; *Public Service Co. v. B. Willis, C.P.A.,* 1997 OK 78, ¶ 11, 941 P.2d 995, 999.

14. The terms of 12 O.S.1981 §§ 3-6, by which special proceedings were recognized as a class separate from actions, were repealed in 1984. The now-repealed text provided:

dichotomy of actions and special proceedings stands abolished by the 1984 Pleading Code.[15] In pre-1984 days, the distinction between a special proceeding and an action *lay solely in how the courts were required to process certain extra-code procedural tracks.* The adjective law of the state still confines its general pleading code to mainstream actions. It recognizes the existence of several separate procedural tracks reserved for application to proceedings that differ from mainstream actions.[16] "Special proceedings" is a term by which we continue to distinguish that litigation which is not governed by the general regime of pleadings.[17] Both "actions" and "special proceedings" must present for adjudication *a redressable right* [18]— *one that is fit for judicial vindication.* Condemnation is a suit to vindicate one's right to exercise the power of eminent domain. **Its distinctiveness from other actions in the mainstream lies solely in matters of pleading, practice and procedure prescribed by**

**law for the affordable redress, rather than in a categorical division for separation of redressable rights from nonactionable detriment.**[19]

¶ 5 A judicially pressed exercise of eminent domain power clearly presents a controversy over a juristic right. The demand hence constitutes a cause of action whose vindication is affordable in the courts.[20] The genre of procedural regime that must govern a matter in litigation is utterly immaterial in applying the Constitution's § 52 restriction on legislative interference with a pending cause of action.[21] Because this condemnation case was filed **before** the ban's enactment into a statute,[22] it stands unaffected by the legislature's **later suspension** of the city's right to exercise its eminent domain power. Inasmuch as I agree with the Eastern District's [the United States District Court for the Eastern District of Oklahoma] refusal to dismiss the instant claim, I would state in answer to the question posed by the certify-

§ 3. Division of remedies
"Remedies in the courts of justice are divided into: First, actions. Second, Special proceedings."
§ 4. Action defined
"An action is an ordinary proceeding in a court of justice by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense."
§ 5. Special proceedings
"Every other remedy is a special proceeding."
§ 6. Kinds of action
"Actions are of two kinds: First, Civil. Second, Criminal."

**15.** It is the substantive-law essence of an action or proceeding—*not its procedural attributes*—that gives a quest for relief its characteristic as a cause of action. The pertinent provisions of 12 O.S.1991 § 2001 are:
"The Oklahoma Pleading Code governs the procedure in the district courts of Oklahoma in all suits of a civil nature whether cognizable as cases at law or in equity *except where a statute specifies a different procedure.*" * * * (Emphasis supplied.)
The terms of 12 O.S.1991 § 2002 provide:
There shall be *one form of action* to be known as "civil action". (Emphasis supplied.)

**16.** For the text of 12 O.S.1991 § 2001–2002 see *supra* note 15.

**17.** Condemnation, like probate, adoption or juvenile cases, is a special proceeding because it is not entirely governed by the 1984 *Pleading Code.*

*Wilson v. Kane,* 1993 OK 65, ¶ 6, 852 P.2d 717, 721; *Board of Law Library Trustees v. State,* 1991 OK 122, ¶ 5n.11, 825 P.2d 1285, 1288.

**18.** The term "right is generic, common, embracing whatever may be lawfully claimed." Wesley Newcomb Hohfeld, Fundamental Legal Concep-tions 35–36 (Walter Wheeler Cook ed., 1964) (citing *Lonas v. State,* 50 Tenn. 287, 3 Heisk. (Tenn.), 287, 306–307 (1871)).

**19.** "The cause of action is based on the substantive law of legal liability . . .". *Landry v. Acme Flour Mills Co.,* 1949 OK 170, ¶ 17, 202 Okla. 170, 211 P.2d 512, 515 (quoting *Elliott v. Chicago, M. & St. P. Ry. Co.,* 35 S.D. 57, 150 N.W. 777, 779).

**20.** "The cause of action is the thing done or omitted to be done, which confers the right to sue; that is, the wrong against the plaintiff, which caused a grievance for which the law gives a remedy." *Greene v. L. Fish Furniture Co.,* 272 Ill. 148, 156, 111 N.E. 725; Shipman, Handbook of Common-Law Pleading 196 (3rd ed.1923).

**21.** Although the legislature may abolish a cause of action, it is powerless to do so retrospectively. *First Nat. Bank of Pauls Valley v. Crudup,* 1982 OK 132, ¶ 8, 656 P.2d 914, 916–17. For the terms of Art. V § 52, Okl. Const., see *supra* note 1.

**22.** See *supra* note 2.

ing court [the United States Court of Appeals for the Tenth Circuit] that Oklahoma's § 52 protection is invocable to save this litigation from the after-enacted statutory ban on some municipal acquisitions by condemnation.

## Summary of Dissent

¶ 6 Claims governed by an extra-code regime of procedure are not necessarily excluded from the class of those prosecuted upon a "cause of action." Neither jurisprudence nor scholarly literature that followed the abolition of the writ system will support a pronouncement that the term "cause of action" was intended to be reserved for code-regulated litigation.[23] Condemnation claims are prosecuted upon a cause of action for acquisition of property by exercise of eminent domain power.

¶ 7 The court's pronouncement raises for the Field Code a claim that cannot be sustained—that of imparting cause-of-action attributes *exclusively* to those judicial proceedings in which its norms of procedure govern. *The Field Code*[24] *confers no substantive rights.*[25] *It is, in its entirety, an adjective-law enactment.* "The cause of action is based on the substantive law of legal liability ..."[26] What is worse, today's conclusion, which rests on no known or identifiable authority, is enveloped in thick clouds of doubtful historicity.

**23.** Atkinson, Codification of Probate Law 177 et seq. in David Dudley Field. Centenary Essays, New York University School of Law (1949).

**24.** The meaning to be ascribed to the phrase here in contest within the context of § 52 must be informed by the concept's application and use in the practice under the Field Code during the first decade of the twentieth century, the period when the Oklahoma Constitution was drafted, proposed and adopted. The dissent's analysis is consistent with the teachings of that compilation's impact and understanding by contemporary scholarly, professional and judicial literature, national as well as Oklahoma's own. James Willard Hurst, The Growth of American Law 90–92, Little, Brown and Company (1950); Lawrence M. Friedman, A History of American Law 340–347, Simon & Schuster (1973).

**25.** *Weems v. Melton*, 47 Okl. 706, 150 P. 720, 722.

**26.** *Landry v. Acme Flour Mills Co., supra* note 19 at ¶ 17 at 515.